# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID TAYLOR, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, )<br>Acting Commissioner of the Social )<br>Security Administration,[1] )<br>)<br>Defendant. ) | Case No. CIV-16-21-JHP-SPS |

## REPORT AND RECOMMENDATION

The claimant David Taylor requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born January 24, 1962, and was fifty-two years old at the time of the administrative hearing (Tr. 31). He completed ninth or tenth grade, and has worked as a groundskeeper (Tr. 20, 199). The claimant alleges that he has been unable to work since August 1, 2011, due to a gunshot wound in his left foot and high blood pressure (Tr. 198).

### Procedural History

On October 26, 2011, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His application was denied. ALJ Bernard Porter held an administrative hearing and determined that the claimant was not disabled in a written opinion dated June 10, 2014 (Tr. 11-21). The Appeals Council denied review; thus, the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b), *i. e.*, he could lift/carry/push/pull twenty pounds occasionally and ten pounds frequently, and stand/walk and sit six hours in an eight-hour workday, except that he could only occasionally use foot controls with the left lower extremity,

reach overhead with the right dominant upper extremity, kneel, and climb ramps and stairs. Furthermore, the ALJ determined that the claimant could never climb ladders or scaffolds, crawl, work around unprotected heights or around moving mechanical parts, or have concentrated exposure to dust, fumes, gases, humidity, and wetness, and that he needed to avoid temperature extremes, but that he could frequently balance, stoop, and crouch. The ALJ additionally stated that the claimant could perform simple tasks and make simple work-related decisions, and have no more than occasional interaction with supervisors, co-workers, and the public, and that, due to his symptoms, he could be off task 10% of the workday and may miss one day of work each month (Tr. 15). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work in the regional and national economy he could perform, *i. e.*, bakery worker, small products assembler, and bottling line attendant (Tr. 20).

## Review

The claimant contends that the ALJ erred by: (i) failing to account for his left foot deformity following a gunshot wound, (ii) failing to properly account for his mental impairments, (iii) failing to properly assess his credibility, and (iv) failing to find he was disabled under the Grids. The undersigned Magistrate Judge agrees with the claimant's first contention and that the ALJ failed to properly assess the claimant's RFC, and the decision of the Commissioner should therefore be reversed and the case remanded for further proceedings.

The ALJ found that the claimant had the severe impairments of depressive disorder, cognitive disorder, anxiety disorder, gunshot wound to the left foot, chronic obstructive pulmonary disorder, history of alcohol abuse, coronary artery disease, hypertension, gastric ulcer disease, degenerative joint disease of the right shoulder, and a history of a transient ischemic attack (Tr. 13). The relevant medical evidence reveals that, prior to his alleged onset date, he had a previous gunshot wound to the left foot. On December 27, 2011, the claimant was admitted to Sequoyah Memorial Hospital and discharged the next day, for aphasia, a resolved transient ischemic attack, hypertension, facial weakness and numbness that resolved, and right sided weakness that resolved (Tr. 291).

As to his physical impairments, Dr. Wojciech L. Dulowski conducted a physical examination of the claimant on April 19, 2012. Dr. Dulowski noted that the claimant had pain in his left foot and leg, as well as difficulty with walking (Tr. 353). He further noted that the claimant walked with a definite limp to the left side, that his foot had slight external rotation but good safety and stability, and that he could not walk on tiptoes or heels on the left side (Tr. 354). He assessed the claimant with, *inter alia*, s/p gunshot injury to left foot with deformity and decreased movement in ankle joint (Tr. 354).

Dr. Dulowski conducted a second physical exam of the claimant on November 27, 2012. He again noted the claimant's limp, external rotation but good stability, and inability to walk on tiptoes and left heel (Tr. 390). He further provided the same assessment regarding the claimant's ankle joint (Tr. 390).

In 2013, the claimant began receiving treatment at Cherokee Nation Health Services. Treatment notes reflect that the claimant was often noncompliant with blood pressure medications, and repeatedly complained of pain in his left foot, for which he was prescribed increasing doses of medication (Tr. 401-418). Physical examination of the left foot revealed scarring and that a portion had been surgically removed, but no edema and no joint swelling (Tr. 403). Notations described as "brief neuro exam" indicated that the claimant moved his extremities well and that his gait was normal (Tr. 411, 417). On March 12, 2014, the claimant reported neuropathy in his left lower extremity (Tr. 414).

A state reviewing physician determined that the claimant could perform the full range of light work with no manipulative or postural limitations (Tr. 380-386).

At the administrative hearing, the claimant testified that his foot pain had gotten worse over the years (Tr. 40). He stated that the pain is daily, and is triggered by walking on it but also hurts while he is sitting (Tr. 43). He further testified that he could sit for two hours at most at a time, lift and carry ten pounds comfortably, and walk a quarter of a mile, but that he did not think he could do that every day (Tr. 47-48, 54). He testified that he has a wolf that he keeps in a "run," because he could not walk him (Tr. 51). When asked what he does for exercise, he stated that he does a few sit-ups, and that he also tries to walk a little but that he has to take quite a few breaks (Tr. 52). In describing his previous work, the claimant testified that he had a cane that he would sometimes use to help him get up and down off a tractor (Tr. 54).

In his written opinion, the ALJ summarized the claimant's hearing testimony, as well as the medical evidence in the record, most notably here, Dr. Dulowski's

examination findings and the subsequent medical treatment records. He found the claimant's subjective complaints of pain to be out of proportion to the medical evidence (Tr. 18). He then stated that the claimant had decreased strength in the left leg with gait disturbance but that subsequent treatment records indicated he had a normal gait and station and no neurological deficits (Tr. 18). The ALJ did not assign weight to Dr. Dulowski's opinion, nor did he discuss the reduced range of motion, or the permanent deformity of the foot. He further only discussed the claimant's complaints of pain to reject them (rather than consider any physical limitations that might correspond), and noted that the claimant had reported at one time that he could walk up to one-half a mile and was able to mow his lawn (Tr. 18).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted]. The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350

F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ wholly failed to perform this analysis with regard to Dr. Dulowski's opinion, choosing instead to rely on treatment notes where the claimant's primary complaint was often unrelated to the permanent physical injury addressed by Dr. Dulowski. It was error for the ALJ to "pick and choose" in this way, *i. e.*, to cite findings supportive of his own determination while disregarding unsupportive findings. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper."). Furthermore, the ALJ indicated that he gave great weight to the state reviewing physician opinions, but that he had "further limited" him to a reduced range of light work (Tr. 19). But the ALJ pointed to no evidence that the claimant could sit and stand/walk up to six hours each in an eight-hour workday in light of the documented reduced range of motion of the ankle and permanent left foot deformity.

The undersigned Magistrate Judge further notes that the Social Security Administration eliminated the term "credibility" in Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016), and has provided new guidance for evaluating statements pertaining to intensity, persistence, and limiting effects of symptoms in disability claims. "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new

policy affects its prior decision." *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (*quoting Sloan v. Astrue*, 499 F.3d 883, 889 (8th Cir. 2007). In light of the ALJ's use of boilerplate language in evaluating credibility in the first instance in this case, the undersigned Magistrate finds that remand for proper analysis under the new guidance would likewise be advisable here.

Because the ALJ failed to properly assess the claimant's RFC, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis of *all* the evidence related to the claimant's impairments. If such analysis on remand results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 1st day of March, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**